UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TOMMY MEJIA,<br>    Plaintiff, | :    Case No. 3:25-cv-694(JCH)<br>:<br>: |
| v. | :<br>: |
| ANGEL QUIROS, et al.,<br>    Defendants. | :<br>:    DECEMBER 29, 2025 |

## INITIAL REVIEW ORDER

Pro se plaintiff Tommy Mejia, a sentenced[1] inmate currently incarcerated at the Cheshire Correctional Institute ("Cheshire CI") filed this civil rights action bringing claims under 42 U.S.C. section 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA").  See Complaint ("Compl.") (Doc. No. 1)

His claims center around conduct that he alleges amounted to inattention to his serious medical needs.  He names twenty defendants: Department of Correction ("DOC") Commissioner Angel Quiros; Governor of Connecticut Ned Lamont; Deputy Commissioner W. Mulligan; Deputy Commissioner S. Carlos; Director of Programs E. Garcia; Cheshire CI Warden Jennifer Reis; Cheshire CI Warden Carlos Nuńez, Cheshire CI Captain and ADA Coordinator Brane Blackstock; District Administrator N. Rodriguez; Administrative Remedy Coordinator at Osborn Correctional Institution ("Osborn CI") Jane/John Doe; Health Service Administrator Remedy Coordinator at Osborn CI Jane/John Doe; Osborn CI ADA Coordinator Colleen Gallagher; Osborn CI

---

[1] Information on the Department of Correction website shows that Mr. Mejia was sentenced on May 4, 2017, to ten years imprisonment.  See https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=379060 (last visited Dec, 2025).  The court takes judicial notice of this public record.  See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); Kelley v. Quiros, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

ADA Coordinator E. Dolittle; Osborn CI Registered Nurse Nicole; Osborn CI Registered Nurse Hemingway; Osborn CI CHNS T. Dyke; Osborn CI Warden Martin; Osborn CI Doctor John Doe; John Dempsey Hospital; and Osborn CI APRN Cheryl Spano Lonis. Id. at 3-22.

Mr. Mejia's Complaint brings claims against these defendants in both their official and individual capacities. Mr. Mejia seeks compensatory and punitive monetary damages, injunctive relief, and declaratory relief. Id. at 18-19.

## I. FACTUAL BACKGROUND

Mr. Mejia alleges he has experienced severe lower back pain since 2021. Id. at 8. This pain interrupted his sleep while he was housed at MacDougall-Walker Correctional Institution ("MacDougall"). Id. While housed at MacDougall, Mr. Mejia slept on the top bunk in his cell and moving to and from the top bunk exacerbated his back pain. Id.

After being transferred to Cheshire CI, Mr. Mejia's back pain worsened throughout 2022. Id. He alleges he notified Captain Blackstone about his worsening pain and difficulty sleeping. Id. at 8-9. Mr. Mejia recalls that Medical responded by saying that Mr. Mejia had received Ibuprofen 800 mg and "[n]othing more [could] be done." Id. at 9.

Mr. Mejia alleges that, in person, DOC nurses would tell Mr. Mejia to stop writing them because only the ADA Coordinator could approve Mr. Mejia for a medical mattress, which Mr. Mejia alleges he requested. Id. Mr. Mejia alleges that Captain Blackstone "kept telling [him], bro stop fucking sending [ ] requests before I place you in segregation." Id.

On May 18, 2022, Captain Blackstone approached Mr. Mejia's cell door and told him, "I'm gonna accommodate to your medical issues, you fucking pest." Id. Captain Blackstone gave Mr. Mejia a reasonable accommodation request form, which Mr. Mejia filled out immediately, memorializing his request for a medical mattress or a double mattress. Id. at 9-10.

On May 31, 2022, Captain Blackstone verbally informed Mr. Mejia that he had been approved for a medical mattress. Id. at 10. When Mr. Mejia asked when he would receive the mattress, Mr. Mejia alleges Captain Blackstone responded, "you keep fucking bothering me and you won't get shit," and calling him a "spick." Id. Mr. Mejia alleges that he never received the medical mattress. Id. at 11.

In 2023, Mr. Mejia was transferred to Osborn CI, where he was told that he would have to reapply for a medical mattress because Osborn CI's procedures are separate from those of MacDougall. Id. When he reapplied, Mr. Mejia was told there was no record of an ADA accommodation request in his records. Id. at 11-12.

At Osborn CI, Mr. Mejia was assigned to the top bunk. Id. at 12. On April 17, 2024, Mr. Mejia suffered an injury to his finger while moving down from the top bunk. Id. He recalls that the top bunk had no railing or ladder and, when he fell from the bunk, he fractured his hand. Id. at 12, 14.

Mr. Mejia was given medical attention at Osborn CI before being transferred to the medical center at the University of Connecticut. Id. at 13. His injury left him with a deformed finger, numbness, non-stop pain, shooting pain, and a lack of control of his fingers. Id. at 12, 14.

Mr. Mejia alleges that providers at Osborn CI refused to prescribe Mr. Mejia pain

medication.  Id. at 14.  Mr. Mejia recalls visiting Dr. John Doe, the orthopedic doctor at Osborn CI, twice to seek care.  Id. at 15.  Dr. Doe "refused to provide physical therapy, sleep medication[,] and pain medication."  Id.  This refusal was despite Mr. Mejia telling Dr. Doe about his "extreme pain in [his] dominant right hand, little control over [his] finger, numbness, sleepless nights, any pressure hurts, swelling in [his] hand[,] and pain from [his] hand that shoots up [his] inner arm up to the elbow and at times . . . [random] finger twitches."  Id.  Mr. Mejia alleges he asked Dr. Doe to "send him for surgery" because his "knuckle is gone," but Dr. Doe declined.  Id.  Mr. Mejia also recalls that his hand brace was confiscated from him without a given reason, in spite of the fact that Mr. Mejia possessed an order allowing him to keep the brace with him overnight.[2]  Id. at 16.

Mr. Mejia alleges that injuries would not have happened if the defendants had allowed him to have a medical mattress at Osborn CI and to avoid sleeping on the top bunk.  Id. at 16-17.

## II.    STANDARD OF REVIEW

Under section 1915A of Title 28 of the United States Code, the court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. §1915A(a).  This duty includes review of amended complaints.  The court then must "dismiss the complaint, or any portion of the complaint," if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. §1915A(b).  Dismissal under this provision may be with or without prejudice.  See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004).

---

[2] There is no indication of who confiscated Mr. Mejia's allowed medical device.  However, such a confiscation, if well pleaded, could rise to the required standard.  See, supra, at 12.

4

A civil complaint must include sufficient facts to afford defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

It is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.' "  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).  However, even self-represented parties must satisfy the basic rules of pleading, including the requirements of Rule 8.  See, e.g., Wynder v. McMahon, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike.").

## III. DISCUSSION

Mr. Mejia's Complaint alleges claims under the ADA, the RA, and the Eighth Amendment:

### A. Official Capacity Claims

To start, in the context of a section 1983 suit, plaintiffs may only sue state officials in their official capacities to the extent that they seek non-monetary, injunctive relief.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989).[3]

Here, Mr. Mejia seeks an injunction in the form of requesting specific medical

---

[3] "[A] private right of action under 42 U.S.C. § 1983 is available to enforce a right created by Title II of the ADA."  See Williams v. City of New York, 121 F. Supp. 3d 354, 369 (S.D.N.Y. 2015).  However, because there are no plausible ADA or RA claims, there is no need to address the distinctions that apply to those claims.  See, supra, p.7-8.

5

treatment and a medical pass allowing him to bypass the correctional officers when he wishes to visit the medical team.  See Compl. at 18.  Because Mr. Mejia's claim will proceed only against Captain Blackstock on his Eighth Amendment claim related to Mr. Mejia's need for a medical mattress and to sleep on a lower bunk, the injunctive relief that Mr. Mejia seeks is not plausible as it is unrelated to the remaining claim.

Therefore, because as pleaded Mr. Mejia does not seek any plausible injunctive relief against Captain Blackstock, the claims against Captain Blackstock in his official capacity are dismissed with prejudice.  The claims against all other defendants in their official capacities are also dismissed with prejudice as there is no plausible injunctive relief.

### B. Declaratory Relief

Next, Mr. Mejia seeks a declaration that defendants have violated the Constitution.  See Compl. at 18.  However, the court having dismissed Mr. Mejia's official capacity claims against all defendants, finds that Mr. Mejia may only proceed against the remaining defendants in an individual capacity basis.

However, even if Mr. Mejia were to ultimately prevail on a claim against a defendant in his or her individual capacity, then a "verdict in his favor would necessarily reflect a finding that the defendants violated his [ ] rights."  See Baltas v. Rizvani, 2022 WL 17251761 at *6 (D. Conn. Nov. 28, 2022).  Thus, a declaratory judgment would serve no purpose if granted.

Accordingly, Mr. Mejia's request for declaratory relief is dismissed with prejudice.

### C. ADA/RA

On the merits, Mr. Mejia's Complaint is construed broadly to allege a claim under

the ADA and the RA.  Because the standards under both the ADA and the RA are, for present purposes, the same, the claims will be evaluated together.  See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).

Title II of the ADA provides that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. section 12132.  To state a cognizable ADA claim, Mr. Mejia must allege facts establishing three factors: (1) he is a qualified person with a disability, (2) defendants are considered an entity subject to the ADA, and (3) he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disabilities.  Wright v. New York State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016).  "A qualified individual can base a discrimination claim under Title II of the ADA on one of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  Lenti v. Connecticut, No. 3:20-cv-127(SRU), 2020 WL 427500, at *8 (D. Conn. July 24, 2020) (quoting Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks omitted)).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1)(A).  Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  "[I]n assessing whether a plaintiff has a

disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." Troeger v. Ellenville Cent. Sch. Dist., 523 F. App'x 848, 852 (2d Cir. 2013) (quoting Ryan v. Grae & Rybicki P.C., 135 F.3d 867, 870 (2d Cir. 1998)) (internal quotation marks omitted) (emphasis added).

Relevant to his ADA and RA claims, Mr. Mejia alleges that his lower back pain has impacted his ability to sleep. See Compl. at 8, 11. For initial review purposes, Mr. Mejia is disabled within the meaning of the ADA, thereby satisfying the first element. Second, the ADA applies to state prisons. See Harris v. Brennan, No. 21CV906(MPS), 2021 WL 4593611, at *2 (D. Conn. Oct. 6, 2021) (citing Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S 206, 209 (1998) (ADA "includes State prisons and prisoners within its coverage")).

To prove the final element, Mr. Mejia may invoke three potential theories: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009); see also Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565. 573 (2d Cir. 2003). However, Mr. Mejia alleges no facts suggesting that he was discriminated against because of a qualifying disability or that he was denied an opportunity to participate or benefit from services or programs because of that qualifying disability. Mr. Mejia alleges that he was denied necessary medical services, but neither the ADA nor the RA "applies to claims regarding the adequacy or substance of services provided by correctional departments or provides a remedy for medical malpractice." Reese v. Breton, No. 3:18CV01465(VAB), 2020 WL 998732, at *5 (D. Conn. Mar. 2, 2020).

"Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." Elbert v. New York State Dep't of Corr. Servs., 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (citing Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir.1998)).

Mr. Mejia has not alleged facts sufficient to support an inference he is being treated differently because of his disability. His ADA and RA claims are dismissed.

### D. Eighth Amendment Deliberate Indifference

Liberally construing Mr. Mejia's Complaint, the court will address whether he adequately pleaded an Eighth Amendment claim arising out of a continuing deprivation of necessary medical care.

#### 1. Personal Involvement

First, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). The Second Circuit has clarified that, when assessing personal involvement, "there is no special rule for supervisory liability." Tangreti v. Bachman, 983 F.3d 609, 618 (2d Cir. 2020).

To prevail on a section 1983 claim against a supervising official, a plaintiff must plead and prove that the supervising defendant "violated the Constitution" through his or her "own individual actions." Id. "[C]onclusory claims that a supervisor did not respond to letters or grievances," however, are "insufficient to establish personal involvement." Rogers v. Lamont, 2022 WL 3716446, at *4 (D. Conn. Aug. 29, 2022) (internal quotation marks and citation omitted).

Here, Mr. Mejia names twenty defendants. After being named, some defendants

9

are not mentioned again in the Complaint, including DOC Commissioner Angel Quiros; Governor of Connecticut Ned Lamont; Deputy Commissioner W. Mulligan; Deputy Commissioner S. Carlos; Director of Programs E. Garcia; Cheshire CI Warden Jennifer Reis; Cheshire CI Warden Carlos Nuńez, District Administrator N. Rodriguez; Administrative Remedy Coordinator at Osborn CI Jane/John Doe; Health Service Administrator Remedy Coordinator at Osborn CI Jane/John Doe; Osborn CI ADA Coordinator Colleen Gallagher; Osborn CI ADA Coordinator E. Dolittle; Osborn CI Warden Martin; John Dempsey Hospital; and Osborn CI APRN Cheryl Spano Lonis. Id. ¶¶ 3-22. Allegations against these defendants are dismissed for lack of well pleaded facts, rendering the claims as non-existent and for failure to plead those defendants' personal involvement. See Tangreti, 983 F.3d at 618.

Certain of the other named defendants – including Osborn CI Registered Nurse Nicole; Osborn CI Registered Nurse Hemingway; and Osborn CI CHNS T. Dyke – are only referenced as having not responded or responded inadequately to his various requests. Id. ¶ 17. These defendants are dismissed because these sorts of conclusory allegations of personal involvement are inadequate to state a claim. See Rogers, 2022 WL 3716446, at *4.

2. Merits

Mr. Mejia's Eighth Amendment claim will be analyzed with regard to the two remaining defendants: Cheshire CI Captain and ADA Coordinator, Brane Blackstock, and Osborn CI Doctor, John Doe.

The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits "cruel and unusual punishments." U.S.

Const. amend. VIII.  The ban on cruel and unusual punishment "does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted).

In Estelle v Gamble, the Supreme Court held that the Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners."  429 U.S. 97 at 104 (1976). Deliberate indifference may not only be exhibited "by prison doctors in their response to the prisoner's needs," but also "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Id. at 104-05.

To state a plausible claim that defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment, Mr. Mejia must allege that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'"  Washington v. Artus, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006)).

Regarding the first element, Mr. Mejia has sufficiently alleged, for purposes of initial review, that his back condition and his later arm and hand pain are serious medical issues.  See, e.g., Eason v. Walsh, No. 3:20CV00271(SALM), 2022 WL 326990, at *4 (D. Conn. Feb. 3, 2022); Abreu v. Farley, No. 6:11CV06251(EAW), 2019 WL 1230778, at *10 (W.D.N.Y. Mar. 15, 2019) ("[C]ourts have held that severe back pain, especially if lasting an extended period of time, can amount to a serious medical need under the Eighth Amendment." (citation and quotation marks omitted)).

Next, the court will examine the subjective component specific to each remaining defendant.

      i. Defendant Dr. Doe

With respect to defendant Dr. Doe, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim." Smalls v. Wright, 807 F. App'x 124, 126 (2d Cir. 2020) (summary order) (quoting Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)).  Mr. Mejia's allegations against Dr. Doe are premised on Mr. Mejia's disagreement with Dr. Doe's medical treatment plan, including Dr. Doe's refusal to prescribe sleep and pain medication including narcotics, physical therapy, and to refer Mr. Mejia for surgery.[4]  See Compl. at 14-15.

"[M]atter[s] for medical judgment," Estelle, 429 U.S. at 107, including ordering x-rays and referral to specialists, are decisions that generally do not form the basis for Eighth Amendment claims, Smalls, 807 F. App'x at 126.  This is because "matter[s] of medical judgment . . . [do not] establish a sufficiently culpable state of mind for an Eighth Amendment claim."  See Wright v. Martin, No. 23-7762-PR, 2025 WL 1091221, at *2 (2d Cir. Apr. 8, 2025) (summary order) (holding that "the medical judgment to continue with medication for several months . . . [for the plaintiff's] abdominal pain, rather than order an MRI, does not support an inference of deliberate indifference").

Although "[a] physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan," including with respect to prescribing pain medication, Smalls, 807 F. App'x at 126 (quoting Chance, 143 F.3d at

---

[4] Although Mr. Mejia claims that his hand brace was confiscated from him without a given reason despite his having an order allowing him to keep the brace, Mr. Mejia does not specify who confiscated it. See Compl. at 16.

12

703), Mr. Mejia has pleaded no facts to support such an inference here. Accordingly, Mr. Mejia's Eighth Amendment claim against Dr. Doe is dismissed pursuant to 28 U.S.C. section 1915A(b)(1) without prejudice.

      ii. Captain Blackstock[5]

With respect to Captain Blackstock, Mr. Mejia suggests that Captain Blackstock acted with deliberate indifference to Mr. Mejia's medical needs by failing to order him a medical mattress that would address his back pain and refusing to allow him to sleep on a lower bunk. See Compl. at 11-12, 14.

Mr. Mejia sufficiently alleges that he informed Captain Blackstock about his need for a medical mattress and his need to sleep on a lower bunk. Id. at 8-11. Mr. Mejia has sufficiently pleaded facts to show that Captain Blackstone interfered with both requests. Id. At this early stage, the claim against Captain Blackstock for deliberate indifference to serious medical needs related to the denial of a medical mattress and refusal to allow him to avoid the top bunk is permitted to proceed for further

---

[5] Mr. Mejia has pleaded facts suggesting that that Captain Blackstock verbally harassed him, including with racial slurs. Under both the Eighth and the Fourteenth Amendments, threats and verbal harassment, absent more, do not rise to the level of a constitutional violation. See Cole v. Fischer, 379 F. App'x. 40, 43 (2d Cir. 2010) ("Verbal harassment, standing alone, does not amount to a constitutional deprivation."); Cuoco v. Moritsugu, 222 F.3d 99, 109 (2d Cir. 2000) (holding that "rudeness and name-calling does not rise to the level of a constitutional violation"); Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (same); Meizies v. McDonald, No. 3:21-CV-1041 (KAD), 2021 WL 3914137, at *3 (D. Conn. Sept. 1, 2021) ("[A]llegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under section 1983, regardless whether the inmate is a pretrial detainee or sentenced prisoner." (quoting Ruffino v. Murphy, No. 3:09-CV-1287 (VLB), 2010 WL 1444562, at *4 (D. Conn. Apr. 12, 2010))). Although some courts have held that verbal harassment causing psychological injury "as a form of punishment" may constitute a violation of the Fourteenth Amendment, Mr. Mejia has not pleaded any such facts here. See, e.g., Ruffino, 2010 WL 1444562, at *4 (citing cases) (holding that the plaintiff "specifically alleges that the defendants' verbal harassment resulted in mental stress, worry, discomfort and emotional harm, and caused him to fear going to court," and those "allegations of injury resulting from the purported verbal harassment are sufficient to support a claim that [the plaintiff] was harassed by the defendants as a form of punishment"). Reprehensible as it is, the use of a racial slur, absent other well pleaded facts, such as disparate treatment based on race, does not rise to a deprivation of Mr. Mejia's constitutionally protected rights. See Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 389 (S.D.N.Y. 2013).

development of the record.  See Eason, 2022 WL 326990, at *5.

**IV.     CONCLUSION**

It is hereby ordered that:

(1)     The Eighth Amendment deliberate indifference claim is DISMISSED against all defendants in their official capacities.  The Eighth Amendment deliberate indifference claim is DISMISSED against all defendants in their individual capacities, except against Captain Blackstock in his individual capacity.  The Eighth Amendment deliberate indifference claim will PROCEED against defendant Blackstock in his individual capacity for further development of the record.

(2)     The ADA and RA claims against all defendants in their individual and official capacities are DISMISSED.

(3)     Within twenty-one (21) days of this Order, the Clerk shall verify the current work address of Captain Blackstock and mail a copy of the Complaint, this Order, and a waiver of service of process request packet to Captain Blackstock in his individual capacity at his confirmed address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request.  If Captain Blackstock fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and Captain Blackstock shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)     Captain Blackstock shall file a response to the Complaint, either an answer or motion to dismiss, within thirty (30) days from the date the Notice of Lawsuit and Waivers of Service of Summons forms are mailed to him.  If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims

recited above.  He may also include all additional affirmative defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.  Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(7) If Mr. Mejia changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that Mr. Mejia MUST notify the Court.  Failure to do so can result in the dismissal of the case.  Mr. Mejia must give notice of a new address even if he is incarcerated. Mr. Mejia should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Mr. Mejia has more than one pending case, he should indicate all case numbers in the notification of change of address.  Mr. Mejia should also notify the defendants or the attorney for the defendants of his new address.

(8) Mr. Mejia shall utilize the Prisoner Efiling Program when filing documents with the Court.  Mr. Mejia is advised that the Program may be used only to file documents with the court.  Local Court Rule 5(f) provides that discovery requests are not to be filed with the court. Therefore, discovery requests must be served on the defendant's attorney by regular mail.

(9) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties.

(10)    The Clerk shall send a courtesy copy of the Complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(11)    Mr. Mejia is given leave to replead any allegations herein which were dismissed without prejudice.  As an example, if he can identify the defendant or person who took his wrist brace, he may amend to seek to assert that claim.  Additionally, if Mr. Mejia can assert well pleaded facts regarding Dr. Doe's alleged lack of treatment or Dr. Doe's electing of an easier and less efficient treatment plan, Mr. Mejia may amend to assert that claim.  Repleading pursuant to this paragraph is due in 21 days.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 29th of December 2025.

    /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge